# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2849

_____

United States of America,          *
                                   *
            Appellee,              *
                                   *   Appeal from the United States
      v.                           *   District Court for the
                                   *   District of South Dakota.
Marc Sean Wisecarver,              *
                                   *
            Appellant.             *

_____

Submitted: March 17, 2011
Filed: June 30, 2011

_____

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

      Marc Wisecarver fired a rifle shot through the front grill of a government-owned pickup truck in the custody of a Bureau of Indian Affairs ("BIA") land assessor. After we vacated his initial conviction for depredation of government property, a second jury found him guilty of the same charge, and the district court sentenced him to 36 months' imprisonment. We affirm the conviction and term of imprisonment, but we vacate three special conditions of supervised release and remand to the district court for an individualized assessment with respect to those special conditions.

## I.    BACKGROUND

In April 2008, Wisecarver resided on a 160-acre tract of land on the Pine Ridge Indian Reservation in South Dakota, where he and his teenage daughter raised horses and farmed. Historically, the tract had been the subject of an "allotment" to an individual Native American under the regime established by the General Allotment Act (also known as the "Dawes Act"), ch. 119, 24 Stat. 388 (1887) (codified as amended at 25 U.S.C. § 331). After the 1934 repudiation of the "allotment" regime by the Indian Reorganization Act, ch. 576, 48 Stat. 984 (1934) (codified as amended at 25 U.S.C. §§ 461-77), the tract has been held in trust by the government for the benefit of descendants of the Native Americans who once held allotment rights in the parcel. *See generally Yankton Sioux Tribe v. Gaffey*, 188 F.3d 1010, 1016 (8th Cir. 1999). The BIA oversees such trust lands. According to BIA records, Wisecarver's first cousin, Randall Jerry Hughes, owns an undivided four-sixths interest in the tract at issue, while Wisecarver owns an undivided one-sixth interest. The remaining one-sixth interest is in probate. Wisecarver was the sole resident on the tract.

In June 2007, Hughes, along with a potential heir of the one-sixth interest in probate, visited Wisecarver at his residence on the tract to discuss the potential for leasing the land to, or executing an exchange of trust land with, a third party. Wisecarver voiced his disapproval of both options. Nevertheless, in April 2008, Hughes filed an application with the BIA to lease the tract of land to a third party. As a result, the BIA sent Duke Bourne, a soil conservationist, to assess the land in order to calculate a suitable rental price.[1] Bourne arrived at the property in a BIA pickup truck with license plates bearing the words "U.S. Government." Wisecarver testified that he first observed the truck idling just inside his front, or north, gate and that he shouted and waved in an attempt to get the driver's attention. However, Bourne drove

---

[1]This assessment also was a necessary predicate to a land exchange, the option Hughes ultimately hoped to pursue.

away from Wisecarver, deeper into the property. Because Wisecarver did not recognize the truck or see any identifying markings, he retrieved his rifle from his house and then followed the truck on foot.

Bourne testified that he initially drove the truck along the inside of the property's fence line to assess the condition of the fence. He then saw a group of horses within the property and drove towards them, hoping to observe their brands or other evidence of ownership. According to Bourne, he drove slowly and carefully among the horses because he did not want to frighten them away and spoil his chance to observe their brand marks. In contrast, Wisecarver testified that Bourne drove carelessly, "chased" the horses, and nearly struck one of them with the truck. Bourne finally noticed Wisecarver when Wisecarver had approached within about twenty feet of his truck. Bourne then drove slowly alongside Wisecarver, stopped, and rolled down his window to converse. Bourne testified that, at this point, he observed that Wisecarver was carrying a rifle, but that it gave him no pause because he had never encountered any problems in his several years of experience assessing land on the Pine Ridge Indian Reservation. The two men conversed through the open driver's side window of the truck, with Bourne remaining seated inside the idling truck and Wisecarver standing beside the driver's door.

Wisecarver asked Bourne why he was on the property, and Bourne replied that he was surveying the land on behalf of the government. Bourne told Wisecarver about the lease application and offered a BIA phone number that Wisecarver could call for confirmation of Bourne's identity and purpose. Wisecarver declined to call the number. Instead, he began explaining the family history of the tract to Bourne and alleged that Hughes, the lease applicant, had obtained his four-sixths interest through fraud. At some point, Wisecarver referred to his own status as the landowner, and Bourne emphasized that Wisecarver was not the "sole" landowner. According to Bourne, Wisecarver became very angry at that statement. Wisecarver testified instead

that he became angry because he thought Bourne had lied about which gate he had used to enter the property and was "chasing the hell out of my horses."

Both parties testified that Wisecarver ordered Bourne to exit the truck and leave the property on foot. According to Wisecarver, Bourne in response "glare[d]" at him, "rev[ved]" the truck's motor, and "snapped his hand on the gear shifter," causing Wisecarver to fear that Bourne intended to drive over him with the truck. According to Bourne, in contrast, Bourne merely responded "what?" and did not move. There is no dispute that Wisecarver next stepped towards the front of the truck and fired a bullet that impacted the truck just above the "U.S. Government" license plate. After the shot, Bourne abandoned the truck and left the property on foot.

Wisecarver was charged with one count of assaulting a federal officer, a violation of 18 U.S.C. § 111(a)(1), (b), and one count of depredation of government property, a violation of 18 U.S.C. § 1361. A jury found Wisecarver not guilty on the assault count and guilty on the depredation count. Wisecarver appealed the guilty verdict, arguing that the evidence was insufficient to support a conviction for depredation and that the district court erred in instructing the jury. We rejected Wisecarver's first argument, holding that "there is sufficient evidence for a correctly-instructed reasonable jury to have determined that Wisecarver had the requisite intent to damage Government property, to find that he did not act in self-defense, and to find Wisecarver guilty beyond a reasonable doubt." *United States v. Wisecarver*, 598 F.3d 982, 987 (8th Cir. 2010). However, we agreed with Wisecarver that a confusingly worded supplemental jury instruction required a vacatur of the judgment of conviction. *Id.* at 990. Our accompanying order of judgment stated that "it is hereby ordered and adjudged that the judgment of the district court in this cause is vacated and the cause is remanded to the district court for proceedings consistent with the opinion of this court." *United States v. Wisecarver*, No. 09-1954, Order of J. (Mar. 22, 2010).

-4-

On remand, the district court set a retrial of the depredation count, and a new jury again returned a verdict of guilty. At sentencing, the district court found that Wisecarver had perjured himself during his trial testimony, and it applied a two-level sentencing guidelines enhancement for obstruction of justice. After calculating an advisory sentencing guidelines range of 21 to 27 months, the district court imposed a 36-month sentence. Wisecarver now appeals his conviction and sentence, arguing that (1) a retrial was outside the scope of the mandate of our opinion vacating his first conviction, (2) the district court should have recused itself from the second trial, (3) a jury instruction misstated the law of trespass, (4) the sentencing enhancement for obstruction of justice was erroneous, (5) the 36-month sentence is unreasonable, and (6) three special conditions of supervised release imposed by the district court are not reasonably related to the offense or to Wisecarver's history. We address these arguments in turn.

## II.  DISCUSSION

### A.  Scope of Our Prior Mandate

Wisecarver argues that a retrial was outside the scope of the mandate of our opinion vacating his first conviction. "When an appellate court remands a case to the district court, all issues decided by the appellate court become the law of the case, and the district court on remand must 'adhere to any limitations imposed on its function . . . by the appellate court.'" *United States v. Castellanos*, 608 F.3d 1010, 1016 (8th Cir. 2010) (alteration in original) (quoting *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995)). However, "[w]hile a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *Id.* (alteration in original) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)).

Here, our mandate left the district court free as to the issue of a retrial. Wisecarver relies on the fact that our prior opinion did not expressly order a retrial, but this fact is not dispositive. Indeed, our prior opinion expressly cited the need to review Wisecarver's sufficiency-of-the-evidence claim, rather than proceeding directly to remand on the basis of an erroneous instruction, because "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient." *Wisecarver*, 598 F.3d at 985-86 (quoting *Burks v. United States*, 437 U.S. 1, 18 (1978)). The result of that review—that there was sufficient evidence to allow "a correctly-instructed reasonable jury" to "find Wisecarver guilty beyond a reasonable doubt," *id.* at 987—thus established that a second trial would not be precluded. Although we did not order a retrial on the depredation count, "our mandate left . . . [that] issue[] open for the district court to decide and expressly ordered the district court to hold further proceedings consistent with our opinion." *Castellanos*, 608 F.3d at 1017.

In short, because nothing in our prior opinion limited the district court's function with respect to the issue of retrial, *see id.* at 1016, such a retrial was entirely consistent with our mandate.

**B.    Recusal**

Upon remand, Wisecarver moved the district court for recusal under 28 U.S.C. § 455(a) on the basis that the district court's negative comments about Wisecarver's credibility during his first sentencing hearing allegedly demonstrated a lack of impartiality. We review the denial of a motion for recusal for abuse of discretion. *Am. Prairie Constr. Co. v. Hoich*, 560 F.3d 780, 789 (8th Cir. 2009). "Under § 455(a), disqualification is required if a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown." *Id.* (quoting *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003)) (internal quotation marks omitted).

-6-

At the first sentencing hearing, in response to Wisecarver's argument that he shot the truck in fear that Bourne intended to drive over him, the district court stated, "There's no evidence that Bourne was attempting to run over your client. That's just a figment of his imagination; and quite honestly, a legal conclusion raised by his counsel." The district court also found, by a preponderance of the evidence for sentencing purposes, that Wisecarver assaulted Bourne, despite the jury's acquittal on that count. Wisecarver argues that these findings evidence bias or prejudice against him sufficient to require the district court to recuse from any further proceedings. However, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of . . . prior proceedings[] do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Moreover, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.*

In order to establish bias on the basis of such in-court conduct, Wisecarver would have to show that the district court's prejudice against him was "so extreme as to display a clear inability to render fair judgment." *Id.* at 551. The classic example of such extreme prejudice is the statement of a district court presiding over a case involving German-Americans accused of espionage in World War I that "[o]ne must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.* at 555 (second alteration in original) (quoting *Berger v. United States*, 255 U.S. 22, 28 (1921)). In the present case, Wisecarver points to no evidence of this type of deep-seated bias or animosity in the district court's remarks. Instead, the district court merely made findings at the first sentencing hearing based on the evidence presented, and no reasonable observer would have perceived that it could not continue to rule impartially in subsequent proceedings on remand. The district court did not abuse its discretion in denying the motion for recusal.

## C.    Jury Instruction Regarding Trespass

Wisecarver argues that Jury Instruction No. 8 prejudiced the jury against his theory of defense by instructing that Bourne was not a trespasser.  We review the district court's decisions with respect to jury instructions for abuse of discretion, affirming "if the entire charge to the jury, when read as a whole, fairly and adequately contains the law applicable to the case."  *United States v. Webster*, 442 F.3d 1065, 1067 (8th Cir. 2006) (quoting *United States v. Sdoulam*, 398 F.3d 981, 993 (8th Cir. 2005)).  "[W]e will reverse only if we find that an instructional error was prejudicial to the defendant."  *Id.*

Jury Instruction No. 8 stated:

A BIA employee who goes upon private property in the performance of his duty is not a trespasser.

The general rule is that conduct otherwise a trespass is often justifiable by reason of authority vested in the person who does the act, as, for example, an officer of the law acting in the performance of a duty.

The instruction, based on South Dakota Pattern Jury Instruction (Criminal) 2-9-11, is an accurate statement of the law.  Because the first paragraph of the underlying South Dakota pattern instruction refers to "an officer of the law . . . investigating a crime," rather than to a government official in general, Wisecarver argues that South Dakota applies this justification for trespass only to police officers investigating a crime.  However, the second paragraph of the South Dakota instruction, incorporated verbatim as the second paragraph of Instruction No. 8 in this case,  makes clear that "an officer of the law acting in the performance of a duty" is just one example of a general rule that applies to conduct "justifiable by reason of authority vested in the person who does the act."  Here, Bourne's presence on the land was justified to the extent he was acting within the scope of the authority vested in him by the majority

landholder through the lease application. Therefore, Instruction No. 8 accurately applies the justification for trespass set forth in the South Dakota pattern jury instruction to this case.

Wisecarver also challenges the instruction on the basis that "Bourne's actual status [as a non-trespasser] was not relevant." A legally accurate but irrelevant jury instruction may be error to the extent it misleads the jury. *Cf. Housing 21, L.L.C. v. Atl. Home Builders Co.*, 289 F.3d 1050, 1055 (8th Cir. 2002) (finding reversible error where, in response to a question from a deliberating jury, the district court provided an answer that, while correct, nevertheless "directed the jury to factual information that was not relevant to the jury's determination"); *United States v. Wadena*, 152 F.3d 831, 855 (8th Cir. 1998) (holding that a challenged jury instruction "was not irrelevant" and thus "was not in error"). We agree with Wisecarver that Instruction No. 8 addressed an irrelevant issue. While Instruction No. 6 allowed the jury to find that Wisecarver's rifle shot was justified if Wisecarver *reasonably believed* that Bourne was a trespasser, no element of Wisecarver's theory of defense (or of the depredation charge) depended on Bourne's *actual status* as a trespasser.[2]

Nevertheless, we find that Instruction No. 8, even if erroneous due to its potentially misleading nature, did not prejudice Wisecarver. *See Webster*, 442 F.3d at 1067. Although Wisecarver told the jury that he initially was angered by Bourne's allegedly unlawful presence on the land and the perceived threat to his horses, Wisecarver never testified that he contemplated firing the rifle at the truck based on

---

[2]Instruction No. 6 stated in relevant part:

> Any person is justified in the use of force or violence against another person when the person reasonably believes that such conduct is necessary to prevent or to terminate the other person's entry on or other criminal interference with real property lawfully in his or her possession . . . .

those factors.  Instead, Wisecarver testified that he decided to shoot the truck solely to prevent Bourne from driving it into him.  The jury was accurately instructed regarding Wisecarver's claim of justification by Instruction No. 7, which stated in relevant part:

> If a person reasonably believes that force is necessary to protect himself from what he reasonably believes to be unlawful physical harm about to be inflicted by another and uses such force, then he acted in self defense.

If the jury accepted Wisecarver's testimony that the rifle shot was necessary because Bourne was threatening to run over him, the jury was free to exonerate Wisecarver under Instruction No. 7, without regard to the issues of trespass addressed in Instruction Nos. 6 and 8.  *See United States v. Paul*, 217 F.3d 989, 997 (8th Cir. 2000) ("[J]ury instructions are evaluated in the context of the entire charge and a jury is presumed to follow all instructions.").  Moreover, we find it highly unlikely that Instruction No. 8, without more, could mislead the jury into believing that the right to defend oneself from being run over by a truck would vanish simply because the driver had authorization to be on the property.  Because Wisecarver suffered no prejudice from the challenged instruction, we hold that any error in the instruction was harmless.  *See United States v. O'Hagan*, 139 F.3d 641, 653 (8th Cir. 1998).

### D.     Sentencing Enhancement for Obstruction of Justice

At sentencing, the district court found that Wisecarver had testified falsely about his belief that Bourne was a trespasser and about threatening actions taken by Bourne.  As a result, it applied a two-level enhancement to Wisecarver's base offense level for obstruction of justice under U.S.S.G. § 3C1.1.  Wisecarver contends that the testimony cited by the district court is not a proper predicate for a perjury finding because it merely expressed his belief or opinion about Bourne's authority to be on the land and the meaning of Bourne's actions.

We review the district court's construction of the advisory guidelines *de novo* and its associated factual findings for clear error. *United States v. Boesen*, 541 F.3d 838, 851 (8th Cir. 2008). The commentary to § 3C1.1 lists perjury as an example of conduct that justifies imposition of the enhancement. *See* U.S.S.G. § 3C1.1 cmt. n.4(b). The district court must find that the defendant obstructed justice by a preponderance of the evidence to apply the enhancement. *Boesen*, 541 F.3d at 851.

Wisecarver relies on *Campbell v. Gregory*, 867 F.2d 1146 (8th Cir. 1989), in which we held that an expert's opinion testimony about the seriousness of a medical condition, although contradicted by a learned medical treatise, did not constitute perjury, *id.* at 1148. *Campbell* is not applicable in the instant case, however, because here the perjury finding was not based solely on Wisecarver's professed opinion or belief about the significance of certain actions, but rather included a finding that actions described by Wisecarver simply did not occur. For example, the district court expressly found perjurious Wisecarver's testimony that, after Wisecarver ordered Bourne to exit the truck, Bourne "glare[d]" at him, "rev[ved]" the truck's motor, and "snapped his hand on the gear shifter," causing Wisecarver to fear that Bourne intended to run over him with the truck. This testimony addresses material facts, not just opinion or belief. Moreover, the district court's finding that this testimony was false is not clearly erroneous, as it is supported by Bourne's conflicting testimony that he merely responded "what?" without moving when Wisecarver ordered him out of the truck. *See United States v. Moore*, 242 F.3d 1080, 1082 (8th Cir. 2001) (finding no clear error in the factual findings underlying a sentencing enhancement where the district court "listened to the conflicting testimony, and accepted the [government witnesses'] version of the facts").

Wisecarver also argues that the district court failed to make independent findings to establish that the testimony at issue arose from the willful intent to provide false testimony, rather than from confusion, mistake, or faulty memory. *See United States v. Smith*, 450 F.3d 856, 862 (8th Cir. 2006). To the contrary, the district court

found that Wisecarver perjured himself "in order to sustain his request for a self-defense instruction." Even absent this express finding of willful intent, we would hold that "the record [leaves] no doubt that the defendant's false testimony at trial was not the result of confusion, mistake, or faulty memory." *Boesen*, 541 F.3d at 852 (quoting *United States v. Vickers*, 528 F.3d 1116, 1122 (8th Cir. 2008)). As a result, we affirm the district court's application of the § 3C1.1 enhancement for obstruction of justice.

### E.    Reasonableness of the Sentence

Wisecarver asserts that his 36-month sentence, an upward variance from his advisory guidelines range of 21 to 27 months, is unreasonable. We review the substantive reasonableness of a sentence for abuse of discretion. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). "[A]n abuse of discretion occurs 'where the sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors.'" *United States v. Bryant*, 606 F.3d 912, 921 (8th Cir. 2010) (quoting *United States v. Moore*, 565 F.3d 435, 438 (8th Cir. 2009)).

Wisecarver contends that the district court failed to consider factors such as his role as a single parent, his former service in the military, and his work as a firefighter and a corrections officer. The transcript shows, however, that Wisecarver presented each of these facts to the district court at the sentencing hearing. "Thus, the district court was aware of [Wisecarver's] arguments, and we therefore presume that the district court considered and rejected them." *United States v. Johnson*, 619 F.3d 910, 922 (8th Cir. 2010).

Moreover, the district court did not clearly err in weighing the relevant factors. In imposing sentence, the district court relied on the serious nature of Wisecarver's offense conduct, which included firing a weapon into the running engine of an

occupied vehicle. The district court's choice to assign relatively greater weight to the nature and circumstances of the offense than to the mitigating personal characteristics of the defendant is well within the "wide latitude [given] to individual district court judges in weighing relevant factors." *United States v. Foy*, 617 F.3d 1029, 1037 (8th Cir. 2010), *cert. denied*, 562 U.S. ---,131 S. Ct. 1512 (2011); *see also United States v. Griffin*, --- F. App'x ---, 2011 WL 2273563, at *2 (8th Cir. June 10, 2011) (unpublished per curiam) (affirming an upward variance based on a level of violence that was "out of the ordinary" for the offense, despite "mitigating evidence from [the defendant] and his family members, who addressed his military service"). Accordingly, we affirm the term of imprisonment imposed by the district court.

## F.      Special Conditions of Supervised Release

Wisecarver challenges the following special conditions of supervised release imposed by the district court:

> 1.      The defendant shall not consume any alcoholic beverages or intoxicants. Furthermore, the defendant shall not frequent establishments whose primary business is the sale of alcoholic beverages.
>
> 2.      The defendant shall submit to a warrantless search of his person, residence, place of business, or vehicle at the discretion of the probation office.
>
> * * *
> 5.      Defendant shall submit a sample of his blood, breath, [or] urine at the discretion or upon the request of the probation office.

Conditions of supervised release are governed by 18 U.S.C. § 3583(d). A special condition need only be "reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)," "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B),

-13-

(a)(2)(C), and (a)(2)(D)," and be "consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)." § 3583(d)(1)-(3). The district court's inquiry into the propriety of a particular special condition "must take place on an individualized basis." *United States v. Curry*, 627 F.3d 312, 315 (8th Cir. 2010) (per curiam) (quoting *United States v. Bender*, 566 F.3d 748, 752 (8th Cir. 2009)), *petition for cert. filed*, --- U.S.L.W. --- (U.S. Mar. 7, 2011) (No. 10-9385). Because Wisecarver did not challenge the district court's imposition of the challenged conditions at sentencing, we review for plain error. *See id.* at 314. "To qualify for relief under this standard, the appellant must show that the district court committed an error that is clear under current law, that the error affects his substantial rights, and that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 314-15.

The Government defends all three of the challenged conditions as reasonably related to the § 3553(a) factors on the sole basis that even minimal involvement with alcohol might exacerbate Wisecarver's volatile temper. There is no allegation or evidence in the extensive record before us, however, to suggest that Wisecarver had consumed any alcohol before his interaction with Bourne, or indeed that Wisecarver ever has had problems related to alcohol. The Presentence Investigation Report did not recommend the special conditions at issue, and the district court gave no explanation whatsoever when it imposed the conditions. Under these circumstances, the imposition of special conditions 1, 2, and 5 without explanation was an error that is plain under current law. *See Curry*, 627 F.3d at 315.

To determine whether the error affects substantial rights, *i.e.*, whether Wisecarver can show a "reasonable probability" that the district court would not have imposed the challenged conditions after an individualized assessment, we must examine where this case falls within the "factual distinctions from our precedent" relating to the special condition at issue. *Id.* Here, the relevant precedent is that the district court may "impose[] a ban on alcohol absent evidence of alcohol abuse or a

link between alcohol and the underlying offense" as long as the ban is not imposed "'on the basis of pure speculation or assumptions unrelated to the rehabilitative process.'" *United States v. Crose*, 284 F.3d 911, 913 (8th Cir. 2002) (quoting *United States v. Behler*, 187 F.3d 772, 779 (8th Cir. 1999)). Given the record before us, the Government's contention that even minimal alcohol use might exacerbate Wisecarver's volatile temper appears to be purely speculative. Based on our precedent, then, the error here is one that affects substantial rights.

Finally, "[b]ecause there is a complete lack of explanation for imposition of the condition, the error also substantially affects the fairness, integrity, or public reputation of judicial proceedings." *Curry*, 627 F.3d at 315. We conclude that Wisecarver is entitled to plain error relief. Accordingly, we vacate special conditions 1, 2, and 5 and remand to the district court for an individualized assessment of whether the three challenged conditions satisfy the requirements of § 3583(d)(1)-(3). On remand, the parties may seek to present evidence relating to the special conditions, and the court should make particularized findings about any special condition that is imposed. *See Curry*, 627 F.3d at 315.

## III.   CONCLUSION

For the foregoing reasons, we affirm Wisecarver's conviction and sentence, with the exception of three special conditions of supervised release. With respect to those three special conditions, we vacate and remand to the district court.

_____